**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No. 20-20397-CIV-GRAHAM

GREAT LAKES INSURANCE SE,

    Plaintiff,

v.

WAVE CRUISER LLC,

    Defendant.

_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Defendant Wave Cruiser LLC's Motion for Summary Judgment (ECF No. 22) and Plaintiff Great Lakes Insurance SE's Motion for Summary Judgment (ECF No. 24).

**THE COURT** considers the motions, the relevant portions of the record and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion for Summary Judgment (ECF No. 22) is denied and Plaintiff's Motion for Summary Judgment (ECF No. 24) is granted.

### I.    BACKGROUND

On or about April 25, 2019, Plaintiff, Great Lakes Insurance SE (hereinafter "GLI") issued Policy No. CSRYP/175137 to Defendant Wave Cruiser LLC (hereinafter "Wave Cruiser") to provide $310,000.00 in first-party property damage insurance coverage for

1

the sport fish vessel named "HookM" (hereinafter the "Vessel").(ECF No. 1). The Policy was issued on behalf of GLI by its underwriting and claims handling agent, Concept Special Risks Ltd. (hereinafter "Concept"). The Policy is an "all risk" marine insurance policy. (ECF No. 22-1). The Policy's "Period of Cover" was from April 25, 2019 to April 25, 2020. *Id.*

Terms of Coverage

Subject to the express and implied terms, conditions, warranties, and exclusions, the Policy afforded coverage against "accidental physical loss or damage" to the Vessel. (ECF No. 22-1). The Policy expressly excluded coverage for damage to the Vessel's engines, mechanical parts, and electrical parts, *unless* such damage was caused by an accidental "external" event. In pertinent part, the policy language provides:

> Exclusions to Coverage A
>
> r. Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.

The Policy also contained a choice of law clause requiring the application of federal admiralty law or, absent an established rule of federal admiralty law, the laws of the State of New York. (ECF No. 22-1)

2

The Incident

On June 16, 2019, during the period of coverage and while operating within the Policy's navigational limits, the Vessel's port engine suffered a catastrophic failure. (ECF No. 22-2). Specifically, the port engine "sustained a sudden and catastrophic failure, which caused severe damage to the engine block, crankshaft, camshaft, connecting rods, pistons and several internal components." (ECF No. 22-5, p.2). Prior to the loss, the engines were properly maintained and serviced by professional marine diesel technicians, including a 2500-hour service and were reported to be in great shape. The engine had been recently inspected and confirmed to be mechanically sound. (ECF No. 22-3). The engine was operated seventeen hours between the time of the inspection and the time of engine failure. (ECF No. 22-5, p. 2). The engine's failure occurred well before the end of the engine's projected lifespan. (ECF No. 22 at ¶11).

Notification of Loss

On or about June 24, 2019, Alliance Marine Risk Managers (hereinafter "Alliance"), acting as agent for Wave Cruiser, timely and properly, reported that the Vessel's port engine had suffered a catastrophic failure on June 16, 2019, that the cause was undetermined, and that complete engine replacement was required. (ECF No. 25-3). On June 26, 2019, Concept assigned Arnold & Arnold, Inc.

to investigate the causes and circumstances of the loss. (ECF No. 25-4).

Captain Allen's First Survey

On July 1, 2019, Captain Ian D. Allen (hereinafter "Capt. Allen") of Arnold & Arnold Inc. examined the Vessel's port engine. (ECF No. 25-5). In his July 10, 2019 "First Report", Capt. Allen noted that the "root cause of the internal failure can only then be identified by removal and disassembly of the engine." (ECF No. 25-5, p. 4). Capt. Allen also noted no evidence of external causation. (ECF No. 25-5, p. 5).

On July 24, 2019, Capt. Allen sent Plaintiff his "Reservation of Rights" letter stating in pertinent part:

> As you know, your Underwriters have assigned us the investigation and adjustment of this matter. They have directed us to notify you their investigation of this claim is being done under a Reservation of Rights. Because the investigation into this matter is complex and ongoing, Underwriters have not been provided sufficient information to confirm or deny coverage. Pending further investigation, Underwriters have instructed us to inform you they are reserving their rights and defenses under the policy for reason enumerated below:
>
> • There is no evidence of external causation. The policy language provides and excludes:
>
> r) Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.
>
> (Reservation of Rights Letter dated July 24, 2019, ECF No. 22-

4

4).

Captain Allen's Second Survey

On October 9, 2019, after the port engine was removed and broken down at Wave Cruiser's expense, Capt. Allen examined the Vessel again, this time in conjunction with the owner of the vessel, an assistant, and an engine Mechanic from Scott Marine. (ECF No. 25-7). Based on this second examination of the port engine, Capt. Allen noted in his Status Report dated October 14, 2019 that it "appeared that the engine had never been disassembled." Capt. Allen also noted that "clamshells were found on the intake side of the pump;" he "could not determine how the clamshells entered [t]he intake; and though "such marine organisms would restrict intake flow, there was no evidence of the engine overheating." (ECF No. 25-7, p.2). Capt. Allen testified in his deposition that because the clamshell was larger than the intake strainer, "there is no way it would have been sucked in." (Deposition of Capt. Allen, p.77: 1-2, ECF 49-1). Capt. Allen observed elongation of the connecting rod, which is evidence of damage occurring over a long period of time, rather than in a sudden failure. *Id.* Capt. Allen noted "no evidence of damage to the propellers that would indicate a bottom strike." (ECF No. 25-7, p.3). Capt. Allen concluded in his status report that:

5

the exact part to fail first below cylinders one and six cannot be determined with certainty. However, we can say with certainty that there was excess friction at the cylinder one and six connecting rod journal and an internal engine failure did occur in this area.

(Capt. Allen's report of October 14, 2019, ECF No. 25-7, p.3).

Based on this second examination of the port engine, Capt. Allen noted that because there was no evidence that the internal failure of the port engine was caused by an external event, GLI should continue to reserve its rights under the policy. *Id.*

Denial of Coverage

On November 5, 2019, nearly one month after Capt. Allen completed his second inspection, Wave Cruiser's counsel received a "Denial of Claim" letter in which GLI denied coverage for Wave Cruiser's claim because there "was no evidence of external causation." (ECF No. 22-11).

Procedural History

On January 29, 2020, GLI filed this action seeking a judgment declaring that: (1) the Policy does not afford coverage for the incident of June 16, 2019 in which the Vessel suffered damage to its port engine; (2) neither the incident of nor the damage resulting from the incident constitutes an accidental physical loss; and (3) coverage for the incident is excluded under the terms of clear and unambiguous exclusions set forth in the Policy. (ECF No. 1).

6

On April 2, 2020, Wave cruiser filed its Counterclaim, which includes two counts. (ECF No. 6). In Count I Wave Cruiser alleges that GLI breached the contract of insurance by failing to cover the loss. Specifically, Wave Cruiser asserts that GLI breached the insurance contract by denying coverage when it was unable to determine the cause of the loss and could not show that the loss was the result of an excluded cause. *Id.* Also, Count I alleges that GLI breached the insurance contract by failing to timely and thoroughly investigate the claim. *Id.* In Count II Wave Cruiser alleges that GLI "breached the covenant of good faith and fair dealing by failing to act in good [faith] to settle [Wave Cruiser]'s claim." (ECF No. 6).

The matter is now before the Court on the parties' cross-motions for summary judgment. (ECF No. 22 and 24).

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A court's focus in

reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970). This standard is not affected by the filing of cross motions for summary judgment, and the Court must determine for each side whether a judgment may be entered in accordance with Rule 56.

**III. DISCUSSION**

    **A.**   **Governing Law**

Federal courts have long considered actions involving marine insurance policies to be within the admiralty jurisdiction of the federal courts and governed by federal maritime law. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 321 (1955); *Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.,* 632 F.2d 424, 428 n. 4 (5th Cir.1980)[1]. However, when neither statutory nor judicially

---

[1] All decisions of the former Fifth Circuit announced prior to October 1, 1981 are binding precedent in this circuit. *United*

created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law. *All Underwriters v. Weisberg*, 222 F.3d 1309, 1312 (11th Cir. 2000); *see also LaMadrid v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 567 F. App'x 695, 699 (11th Cir. 2014) ("[I]n the absence of a controlling rule of federal maritime law, the interpretation or construction of a marine insurance contract is to be determined according to state law."). In the case *sub judice*, the Policy at issue contain a choice-of-law provision that directs the Court to apply New York law in the absence of controlling federal maritime law.[2]

The fortuity doctrine, which guides the determination of coverage under all-risk insurance policies like the one at issue here, is "a creature of federal law. Federal courts sitting in admiralty have been applying some variation of the fortuity rule in marine insurance cases for over a hundred years." *Youell v. Exxon Corp.*, 48 F.3d 105, 110 (2d Cir.), <u>cert.</u> <u>granted</u>, <u>judgment</u> <u>vacated</u> <u>on</u> <u>other grounds</u>, 516 U.S. 801 (1995). However, there are no material differences between Florida, New York, and federal

---

*States v. Fawcett*, 522 F. App'x 644, 652 (11th Cir. 2013) (citing *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)).
2 The Parties do not dispute the validity, enforceability, or

maritime law as it relates to the fortuity analysis and the parties' respective burdens of proof. *See Morrison Grain Co., Inc.*, 632 F.2d at 428-29 (finding "the law of neither New York nor Florida to be materially different from maritime law"); *LaMadrid*, 567 Fed. App'x at 700 ("[O]ur precedent makes clear that Florida law and federal maritime law are not materially different."). Accordingly, as it relates to the determination of coverage and the corresponding burdens of proof, the Court will rely on federal maritime, New York and/or Florida law.

### B.   Cross-Motions for Summary Judgment

The parties agree that a valid insurance policy exists; that the Vessel suffered damage to its port engine within the coverage period of the Policy; that the claim was timely and properly reported; and that Wave Cruiser fully cooperated with GLI. It is also undisputed that after completing its investigation, GLI could not determine the cause of the loss.

### 1. Wave Cruiser's Motion for Partial Summary Judgment

Wave Cruiser requests the Court enter summary judgment in its favor on its breach of contract claim because GLI failed to carry its burden of proof to show the accidental or fortuitous loss is subject to a policy exclusion. (ECF No. 22). Specifically, because it is undisputed that GLI cannot show the cause of the Vessel's

---

applicability of the choice-of-law provision.

engine failure or that it was caused by an excluded internal event rather than a covered external event, it fails to show the loss is excluded by Exclusion r or any policy exclusion. Instead, Wave Cruiser asserts that it has carried its "light burden" of showing a fortuitous loss by showing the Vessel was well maintained, recently serviced and sea trialed, and the failure was sudden and unexpected. Further, the engines undisputed premature failure, under these circumstances, is consistent with an unexplained event. As there is no evidence that the loss is excluded by any policy exclusions, Wave Cruiser argues, GLI breached its insurance contract by denying coverage for its fortuitous loss.

### 2. GLI's Motion for Partial Summary Judgment

Conversely, GLI seeks judgment on its Third Cause of Action, Exclusion for Damage to Engines, Etc., and Wave Cruiser's Count I. (ECF No. 24). In its Third Cause of Action, GLI alleges that the damage to the Vessel's engine was not caused by an accidental external event and therefore subject to Exclusion r of the Policy. (ECF No. 1 at p. 7). Exclusion r bars coverage for any damage to engines *unless* such damage is caused by an external event. GLI contends that Wave Cruiser's claim for damage to the port engine triggers the exception to Exclusion r; and Wave Cruiser bears the burden of proving those facts which trigger an exception to an exclusion. (ECF No. 24). Absent such evidence, GLI asserts, Wave

11

Cruiser fails to carry its burden of proving that the exception to Exclusion r applies. *Id.* GLI contends that there is no record evidence which indicates that an external event caused the damage to the port engine for which coverage is sought. (ECF No. 24). Therefore, GLI argues, it is entitled to a judgment that coverage for the loss claimed by Wave Cruiser is unambiguously barred by the express terms of Exclusion r. *Id.* Moreover, GLI asserts that because there can be no breach of the covenant of good faith and fair dealing where there is no breach of the contract, Wave Cruiser's cause of action for breach of the covenant of good faith and fair dealing must necessarily be dismissed. *Id.*

## A. **Burden Shifting Standard for All-Risk Policies**

The Parties agree that the Policy at issue is an all-risk policy. The Policy states that GLI will provide coverage for "accidental physical loss of or damage to the Scheduled Vessel..." While the term "accident" or "accidental" is not defined, the Parties agree that "accident or "accidental" is synonymous with "fortuitous."

Generally speaking, "all-risk insurance policies cover all 'fortuitous' losses, unless the policy contains a specific provision expressly excluding the loss from coverage." *Great Lakes Reinsurance (UK) PLC v. Kan-Do, Inc.*, 639 F. App'x 599, 601 (11th Cir. 2016) (citation omitted). "[S]uch a policy creates a

special type of coverage that extends to risks not usually covered under other insurance." *LaMadrid*, 567 F. App'x at 700. "[A]ll-risk" does not mean all-loss," however. *City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 47 (2d Cir. 2003).

"A fortuitous event is an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, as the loss of a vessel [sic], provided that the fact is unknown to the parties." *Morrison Grain Co., Inc.,* 632 F.2d at 431 (quoting Restatement of Contracts § 291, cmt. a (1932)). In other words, a loss may be deemed fortuitous or accidental where it was unforeseen, unexpected, unintended, unavoidable, or caused by the insured's own negligence. *See Great Lakes Reinsurance (UK) PLC v. Soveral,* 2007 WL 646981, at *4 (S.D. Fla. Feb. 27, 2007); *Morrison Grain Co., Inc.,* 632 F.2d at 431 ("[A] loss may be fortuitous even it if is occasioned by the negligence of the insured."); *Redna Marine Corp. v. Poland*, 46 F.R.D. 81, 87 (S.D.N.Y. 1969) ("It is well established that where negligence, even on the part of the employees of the insured, causes a loss, that loss is fortuitous and within the coverage of all risks insurance.").

In contrast, fortuity excludes losses due to intentional

13

misconduct of the insured, inherent defect in the object damaged, fraud, and normal wear and tear. *City of Burlington,* 332 F.3d at 47-48; *LaMadrid*, 567 F. App'x at 700; *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886, 893 (M.D. Fla. 1996) (quoting *Sipowicz v. Wimble,* 370 F.Supp. 442, 446 (S.D.N.Y. 1974), "[F]ortuitous events . . [are not] . . . losses occasioned by the incursion of water into a vessel's hull owing to the defective, deteriorated or decayed condition of the hull or ordinary wear and tear.").

To recover under an all-risk marine insurance policy, the insured must show (1) a fortuitous loss, and (2) proof that the loss occurred during the policy period. *Banco Nacional De Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982). Here, it is undisputed that the loss occurred during the policy period. Thus, the question before the Court is whether the damage to the Vessel constitutes a fortuitous loss.

Wave Cruiser's burden of showing a fortuitous loss is "not a particularly onerous one." *See Morrison Grain Co., Inc.,* 632 F.2d at 430. In fact, "all risks insurance arose for the very purpose of protecting the insured in those cases where difficulties of logical explanation or some mystery surround the (loss of or damage to) property." *Id.* (internal quotation marks omitted). For this reason, the insured need not prove "the precise cause of

14

the loss or damage" to demonstrate fortuity. *Id.; see also Great N. Ins. Co. v. Dayco Corp.*, 637 F. Supp. 765, 777 (S.D.N.Y. 1986) ("The very purpose of an all risks policy is to protect the insured in cases where it is difficult to explain the disappearance of the property; thus, the insured need not establish the cause of the loss as part of its case.").

Once Wave Cruiser meets its prima facie burden, then the burden shifts to GLI to show that the policy excludes or creates an exception to coverage. *See Morrison Grain Co., Inc.,* 632 F.2d at 429; *Soveral,* 2007 WL 646981, at *2; *Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012). The insurer's burden is a "heavy one." *AGCS Marine Ins. Co. v. World Fuel Servs., Inc.*, 187 F. Supp. 3d 428, 438 (S.D.N.Y. 2016). If GLI establishes that an exclusion applies, then the burden shifts back to Wave Cruiser to demonstrate that an exception to the exclusion applies. *See French Cuff, Ltd. v. Markel Am. Ins. Co.*, 322 F. App'x 669, 671 (11th Cir. 2009); *Ment Bros. Iron Works Co.*, 702 F.3d at 122.

## B. **Fortuity Analysis**

Wave Cruiser posits that the loss is covered because the Vessel was "well-maintained and the failure was sudden and unexpected." (ECF. No. 22 at 7). It is undisputed that the engine was recently serviced and sea trialed by a professional marine

diesel mechanic. It is also undisputed that the port engine failed before it should have. Wave Cruiser asserts that, under these circumstances, the engine failure is consistent with an unexplained event that, "so far as the parties are aware, is dependent on chance." Morrison Grain Co., Inc., 632 F.2d at 431 (citation omitted). *Id*.

In response, GLI argues that although in showing a fortuitous event Wave Cruiser does not have to offer any explanation for why the damage occurred, it still must identify the failed mechanism that caused the engine damage and loss. (ECF. No. 29). Because Wave Cruiser concedes that it cannot identify the broken mechanism which caused the engine damage, GLI argues there is nothing from which this Court might conclude that the engine damage was caused by a fortuitous event rather than a non-fortuitous event. GLI asserts that without identification of the broken mechanical component, fortuity cannot be shown and Wave Cruiser's motion for summary judgment on the fortuity issue must be denied. *Id.*

The Court rejects GLI's argument. Under New York law, fortuity is generally a question of law for the court to determine. *Redna Marine Corp.,* 46 F.R.D. at 87 (stating that "the characterization of loss as 'fortuitous' is a legal conclusion to be distinguished from the facts upon which it is based"). As previously stated, Wave Cruiser's burden to show that the loss was

fortuitous is slight. *See LaMadrid*, 567 Fed. Appx. at 701. In *LaMadrid,* the Eleventh Circuit found that the insured carried its burden to demonstrate a fortuitous loss "by presenting expert testimony on the cause of the engine's failure, namely the failure of the relief valve, and by establishing that the unexplained loss occurred well before the end of the engine's projected lifespan." *Id.* at 701-02.  The facts were undisputed. *Id.* at 702.  The Eleventh Circuit held that the district court erred by requiring the insured to "pinpoint 'why' the relief valve failed." *Id.* at 701.  The Eleventh Circuit found that "[t]o require Appellants to prove something more, such as the exact cause of the relief valve's failure, would be to require the insureds to prove the precise cause of the engine's failure or, stated otherwise, the 'cause of the cause' of the loss." *Id.* at 702.  According to the Court, "[r]equiring an insured to prove that a loss arose from a covered peril with such specificity seems contrary to the aims of an all-risk insurance policy." *Id.*

Here, neither party has come forward with any expert evidence as to what caused the engine failure. Although the port engine was never examined by any expert acting on behalf of either party, the port engine was examined twice by Capt. Allen during post-incident examinations on July 1, 2019 and October 9, 2019. In both reports Capt. Allen noted that Delivery Captain Julio G. Grabiel, while

17

delivering the Vessel from Alabama to Miami, reported no rough weather, or anything unusual prior to the failure. (ECF NO. 25-7). Also, the Delivery Captain Grabiel reported the failure as sudden and unexpected. Capt. Allen observed no evidence of overheating, or over speed condition, or lube failure. *Id.* Capt. Allen reported that the "exact part to fail first below cylinders one and six cannot be determined with certainty." *Id.* However, with certainty he reported "that there was excess friction at the cylinder one and six connecting rod journal, and an internal engine failure did occur in this area." *Id.* In his deposition, Capt. Allen testified that "other than that a component failed in the crankshaft area, we could not determine the specific cause" of the loss. (Deposition of Capt. Allen, 15: 12-16, ECF 49-1).

Based on the above undisputed facts, Wave Cruiser has met its burden of demonstrating a fortuitous loss. More particularly, Wave Cruiser carried its light burden by establishing that the Vessel was well maintained; recently serviced and sea trialed; the failure was sudden and unexpected; the engine was operated seventeen hours between the time of the inspection and the time of engine failure; and the unexplained loss occurred well before the end of the engine's projected lifespan. Finally, after two examinations of the Vessel, Capt. Allen determined that a failure, of a component in the crankshaft area caused the engine damage and

loss. Further, Capt. Allen testified that although he "know[s] internal components failed. Which ones failed first and caused the sequence of events...can't [be] determined." (Deposition of Capt. Allen, 82: 6-8, ECF 49-1). In other words, the cause of the cause of the failure is unknown. To require Wave Cruiser to prove the precise cause of the loss or damage under these circumstances is contrary to the aims of an all-risk insurance policy. *LaMadrid*, 567 F. App'x at 702. Therefore, Wave Cruiser is entitled to summary judgment on this issue.

Because the Court finds that Wave Cruiser has met its burden of demonstrating an accidental and fortuitous loss under the Policy, the burden shifts to GLI to establish the applicability of one or more of the Policy's exclusions. *Id.*

### C. <u>Policy Exclusions</u>

As discussed <u>supra</u> the proximate cause inquiry guides this Court's determination of coverage. *St. Paul Fire & Marine Ins. Co.,* 2008 WL 4221635, at *3; *Lanasa Fruit S.S. & Importing Co.,* 302 U.S. at 562. "When the court interprets an insurance policy excluding from coverage any injuries 'caused by' a certain class of conditions, the causation inquiry stops at the efficient physical cause of the loss; it does not trace events back to their metaphysical beginnings." *Parks Real Estate Purchasing Grp.*, 472 F.3d at 48. "Only the most direct and obvious efficient cause

should be looked to for purposes of the exclusionary clause." *Id.*
*See, e.g., IAG LLC*, 2015 WL 5173055, at *11; *Axis Reinsurance Co.*,
2009 WL 1537903, at *3.

To "negate coverage by virtue of an exclusion, an insurer
must establish that the exclusion is stated in clear and
unmistakable language, is subject to no other reasonable
interpretation, and applies in the particular case and that its
interpretation of the exclusion is the only construction that
could fairly be placed thereon." *AGCS Marine Ins. Co.*, 187 F.
Supp. 3d at 438.  Such "exclusions will be given the
interpretation which is most beneficial to the insured." *Stroheim*
*& Romann, Inc.*, 2003 WL 1587339, at *3 (quoting *Pan American World*
*Airways v. Aetna Casualty & Surety Co.*, 505 F.2d 989, 999 (2d Cir.
1974)).

As previously noted, GLI's burden of proof "is a heavy one."
*See AGCS Marine Ins. Co.*, 187 F. Supp. 3d at 438.  *Compare IAG*
*LLC*, 2015 WL 5173055, at *11 (holding that the insurer did not
carry its burden of proof where the "determined cause of this
loss: failure of the bilge pumps due to interruption of shore
power" was not expressly excluded in the policy); <u>with</u> *Axis*
*Reinsurance Co.*, 2009 WL 1537903, at *3 (finding that the insured
met its burden  by showing that the proximate cause of the loss,
"gradual corrosion of the gimbal ring," was excepted from coverage

20

under the exclusion for losses due to wear and tear, gradual deterioration, and/or corrosion).

**1. Engine, Mechanical and Electrical Parts (Exclusion "r")**

GLI claims that Exclusion r in the Policy applies to preclude coverage. Exclusion r states that the following is not covered under the policy: "Damage to the Scheduled Vessel's engines, mechanical and electrical parts, *unless* caused by an accidental external event, such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of a foreign object, lightning strike or fire." (emphasis added)

In turn, Wave Cruiser avers that to deny coverage based on Exclusion r, GLI must prove that the loss falls under Exclusion r. To do this, Wave Cruiser asserts, GLI must show that the engine failure occurred as a result of an internal cause (excluded) rather than an external cause (covered). (ECF No. 31). Wave Cruiser argues that because there is no "admissible evidence" which shows the cause of the loss was internal rather than external, GLI cannot carry its "heavy" burden to show Exclusion r applies. *Id.*

The Court finds Wave Cruiser's argument unpersuasive.

Federal Rule of Evidence 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Here, Capt. Allen's observations and opinions documented in his reports are rationally based on his perceptions and are helpful in determining a fact in issue. In both examinations, Capt. Allen observed and reported that the damages were not caused by an accidental external event. Specifically, Capt. Allen testified that "we could not find evidence of any external event that would have precipitated the...failure of the engine." (Deposition of Capt. Allen, 23: 12-15, ECF 49-1). Stated differently, Capt. Allen testified that "an internal event occurred without relation to an external event." (Deposition of Capt. Allen, 25: 5-6, ECF 49-1). Capt. Allen's also testified that, in determining that there was not an external cause for the internal event:

> [W]e photographed the parts. We looked at the parts, viewed the parts. We examined them for various characteristics. And we could not find evidence of, for instance, something like failure of cooling water to have precipitated the loss.

> (Deposition of Capt. Allen, 25: 12-16, ECF 49-1).

Wave Cruiser offers no evidence, expert opinion or otherwise, refuting Capt. Allen's reports or findings that there is no evidence that the damage to the Vessel's engine was caused by an

external event. More importantly, Wave Cruiser offers no evidence that the cause of the loss was caused by an external event and that the exception to Exclusion r is applicable.

Instead, Wave Cruiser asserts that because the cause is unknown then an external event cannot be excluded and therefore GLI has not met its burden to show that the policy excludes or creates an exception to coverage. *See Morrison Grain Co., Inc.,* 632 F.2d at 429. Moreover, Wave Cruiser insists incorrectly that it is GLI's burden, and not its own, to prove that the engine damage was caused by an external event and that the exception to Exclusion r applies. Notably, Wave Cruiser's argument is based on a legal assertion which is made without any basis in caselaw and without citation to any relevant authority.

On this record, GLI has sufficiently established that Exclusion r applies to the loss. In turn, the burden shifts back to Wave Cruiser to demonstrate that an exception to the exclusion applies. *See French Cuff, Ltd. v. Markel Am. Ins. Co.*, 322 F. App'x 669, 671 (11th Cir. 2009); *Ment Bros. Iron Works Co.*, 702 F.3d at 122. The total absence of evidence showing an external event necessarily means that there is no evidence triggering the exception to Exclusion r and coverage for the losses claimed by Wave Cruiser is unambiguously barred by the express terms of Exclusion r. Therefore, the Court finds that there is no genuine

23

issue of material fact to be resolved concerning exclusion "r." Accordingly, GLI is entitled to summary judgment as it relates to exclusion "r."   Because there is no breach of the insurance contract, Defendant's Counterclaim for Breach of the Covenant of Good Faith and Fair Dealing is **DISMISSED** as moot.

**IV. CONCLUSION**

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [D.E. 22] is **DENIED.** It is further

**ORDERED AND ADJUDGED** that Defendant's declaratory judgment counterclaim [D.E. 6] is **DISMISSED**. It is further

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment [D.E. 24] is **GRANTED**. It is further

**ORDERED AND ADJUDGED** that Judgment is entered in favor of Plaintiff and against Defendant as to Plaintiff's Third Cause of Action and Defendant's Counterclaim Count I. It is further

**ORDERED AND ADJUDGED** that Defendant's request for a declaration that Wave Cruiser's recovery for the engine damage and loss sustained on June 16, 2019 is barred by Exclusion r of the Policy is **GRANTED**. It is further

   **ORDERED AND ADJUDGED** that, pursuant to Federal Rule of Civil Procedure 58(a), Plaintiff is directed to submit a proposed order of final judgment within fourteen (14) days of this order. It is further

   **ORDERED AND ADJUDGED** that this case is **CLOSED** for administrative purposes and all pending motions not addressed by this Order are **DENIED as moot.**


   **DONE AND ORDERED** in Chambers at Miami, Florida, this 2nd day of November, 2020.

                              s/Donald L. Graham
                              DONALD L. GRAHAM
                              UNITED STATES DISTRICT JUDGE
cc:  All Counsel of Record